UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TARA L. PUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 3:20-cv-00651-TLS-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security,* | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Tara L. Pugh appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on October 6, 2020, by District Judge Theresa L. Springmann pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1(b) for the issuance of a Report and Recommendation. (ECF 10).

Having reviewed the record and the parties' arguments, I FIND that Pugh's arguments in support of a remand are persuasive, and accordingly, RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

### I. FACTUAL AND PROCEDURAL HISTORY

Pugh applied for benefits in December 2017, alleging disability as of September 1, 2000. (ECF 16 Administrative Record ("AR") 15, 180-83). Pugh's claim was denied initially and upon reconsideration. (AR 69-101). After a timely request (AR 124-25), a hearing was held on June 25, 2019, before administrative law judge ("ALJ") James E. MacDonald, at which Pugh, who was represented by

counsel, and a vocational expert testified (AR 31-68). On July 31, 2019, the ALJ rendered an unfavorable decision to Pugh, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 15-26). Pugh's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20.C.F.R. § 416.1481.

Pugh filed a complaint with this Court in August 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Pugh alleges that the ALJ: (1) erred in evaluating her mental impairments; (2) failed to include provisions from the state agency psychological consultant opinions in the RFC; (3) failed to adequately accommodate Pugh's moderate limitations in concentrating, persisting, and maintaining pace; and (4) erred in evaluating her subjective symptoms. (ECF 20 at 5-26).

At the time of the ALJ's decision, Pugh was twenty-five years old and had no past relevant work. (AR 24). In her application, Pugh alleged disability due to a learning disability and "low vision – blind in left eye." (AR 195).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d

209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to SSI if she establishes "[she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[1] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R. § 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

### B. *The Commissioner's Final Decision*

On July 31, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-26). At step one, the ALJ concluded that Pugh had not engaged in substantial gainful activity since December 7, 2017, the application date. (AR 17). At step two, the ALJ found that Pugh had the following severe impairments: migraine headaches, left eye blindness, Axenfeld Rieger, anxiety, depression, learning disorder/borderline intellectual functioning, obesity, gastroesophageal reflux disease, hiatal hernia, and costochondritis. (*Id.*).

At step three, the ALJ concluded that Pugh did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 18). Before proceeding to step four, the ALJ determined that Pugh's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 21). The ALJ assigned Pugh the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) where the claimant can lift and carry, and push/pull up to 20 pounds occasionally, and up to 10 pounds frequently. The claimant can stand and/or walk for up to six hours of an eight-hour workday, and sit for up to six hours of an eight-hour workday, with normal breaks. The claimant must avoid climbing ladders, ropes, and scaffolds, and must avoid exposure to unprotected heights and moving mechanical parts. The claimant must avoid commercial driving as part of job duties. The claimant must avoid work with objects coming from the left side, such as on an assembly line or conveyor belt. The claimant can be exposed to moderate noise in the workplace. The claimant must avoid any exposure to vibration. The claimant can understand and remember simple instructions, and can carry out simple tasks with simple work related decisions and judgments (such as those consistent with unskilled work), in two hour segments allowing for normal breaks. The claimant can tolerate occasional interaction with supervisors and coworkers. The claimant must avoid tandem tasks, and can have no interaction with the general public as part of job duties. The claimant is limited to low stress work, such as no assembly lines or hourly quotas. The claimant can tolerate occasional changes in a routine work setting. The claimant must avoid work where math is required to carry out job duties, and work must be learned through demonstration.

(AR 20).  The ALJ found at step four that Pugh had no past relevant work.  (AR 24).  However, the ALJ found that jobs exist in significant numbers in the national economy that Pugh can perform.  (*Id.*).  Therefore, Pugh's application for SSI was denied.  (AR 25-26).

### C. Subjective Symptoms

Pugh asserts that the ALJ erred by failing to properly analyze her subjective symptoms.  "In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).  An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435.  *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious error in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms.  These factors include:  daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and

any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *4.

The ALJ found that Pugh's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21). The ALJ noted that although Pugh is blind in her left eye, she has "essentially normal vision in her right." (AR 23). The ALJ also noted that her depression, anxiety, hiatal hernia, and gastroesophageal reflux disease are all being treated with medication and therapy. (*Id.*). While Pugh suffered from migraines, she was treating them with Imitrex and had no neurological specialty referrals for her migraines. (*Id.*). The ALJ considered an "essentially normal" physical exam in July 2018, as well as a March 2019 mental status examination which revealed Pugh was logical, goal oriented, and receptive to processing her issues. (*Id.*). Finally, the ALJ observed that in April 2019, Pugh had no suicidal thoughts, appeared less "blunted or anxious," and was applying for disability in order to move out of her mother's house. (AR 23-24). The ALJ found that "[b]ased upon this evidence, the claimant's allegations are not consistent with the evidence." (AR 24).

1. The Legal Standard

As an initial matter, Pugh argues that the ALJ's discussion of her symptom testimony was based on meaningless boilerplate. Pugh contends that the ALJ's use of the phrase "not entirely consistent" indicates that the ALJ used an improper legal standard in implying that the ALJ would only credit Pugh's statements if they were "entirely consistent" with the medical record. She argues that the ALJ should have instead applied the preponderance of the evidence standard. Some district courts have discussed the distinction between the "entirely consistent" boilerplate language frequently used by ALJs and the preponderance of the evidence standard, finding that the ALJ should use language that is consistent with the regulatory language. *See, e.g., Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018); *John P. v. Saul*, No. 2:19cv0004, 2019 WL 4072118, at *11 (N.D. Ind. Aug. 28, 2019). However, judges in this district have also concluded that the use of this boilerplate language does not, by itself, serve as a basis for remand.

6

> While the ALJ's boilerplate language does not match the statutory standard, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. Moreover, under SSR 16-3p …, the ALJ must "evaluate whether the statements are consistent with the objective medical evidence and the other evidence." Therefore, the use of the language "not entirely consistent" is not, by itself, a basis for remand.

*Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar. 27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019). The Seventh Circuit Court of Appeals, too, has stated that "the [boilerplate] formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony." *Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018). Consistent with this authority, I conclude that the ALJ's use of this boilerplate language, standing alone, is insufficient to require a remand. *See, e.g., Giboyeaux v. Saul,* No. 219-CV-76-JVB-SLC, 2020 WL 439943, at *4-5 (N.D. Ind. Jan. 9, 2020), *R. & R. adopted by Celia G. v. Saul*, 2020 WL 439974 (N.D. Ind. Jan. 28, 2020); *Meeks v. Saul.,* 1:19-CV-00530-SLC, 2020 WL 4530045, at *4-5 (N.D. Ind. Aug. 5, 2020).

Here, the ALJ did not solely recite the boilerplate language in discounting Pugh's symptom testimony. Rather, as explained above, the ALJ provided several reasons for his conclusion about Pugh's symptoms, including inconsistencies in the medical record. (AR 23). As such, Pugh's challenge to the ALJ's determination about her symptom testimony rests on the legitimacy of these reasons.

2. Subjective Symptoms

While the ALJ did provide several statements regarding Pugh's subjective symptoms, the ALJ did not provide a full analysis of which of Pugh's subjective symptoms were inconsistent with which portions of the medical evidence. This error makes it difficult for the Court to determine whether the ALJ properly considered Pugh's subjective symptoms. "It is not enough to simply say that the evidence conflicts with the claimant's testimony; the ALJ must show *how* it conflicts." *Ralston v. Saul,* 3:18-cv-996-PPS, 2019 WL 5558798, at *3 (N.D. Ind. Oct. 29, 2019). Without a proper analysis of how Pugh's subjective symptoms either are consistent or inconsistent with specific portions of evidence in the record, there is no "logical bridge" between the evidence and the ALJ's conclusion. *McKinzey v. Astrue,* 641

7

F.3d 884, 890 (7th Cir. 2011) ("[T]he ALJ must explain [his] decision in such a way that allows us to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record."). Such an error requires remand.

Furthermore, the minimal discussion provided by the ALJ improperly cherry-picks evidence from the medical record while ignoring evidence that contradicts his findings. First, the ALJ noted that "[w]hile at Porter Starke Services, the claimant displayed intact judgment and insight, intact memory, and concentration and attention." (AR 23). The ALJ, however, does not provide any citations to the medical record to support this statement. Moreover, while Pugh was noted to display intact judgment and insight, intact memory, and intact concentration and attention in the "mental status exam" portion of some of the treatment notes, she also displayed a variety of other symptoms both in the mental status exam and as discussed in the narrative portions of those same treatment notes. (AR 658). Outpatient records from Porter Starke indicate anxiety, confusion, "some self insight," and a struggle to understand the questions the physician was asking her. (AR 655). She reported trouble at home, panic attacks, isolation, and confusion. (AR 656). She showed anxious, low, and hopeless mood, as well as flat and anxious affect. (AR 658). At another visit, she had intermittent eye contact, was withdrawn, had guarded attitude, showed some psychomotor slowing, had anxious and depressed mood, showed anxious and blunted affect, and was "very avoidant and fearful." (AR 693). At a July 2018 appointment, her mood was anxious and hopeless, her affect was blunted, and she had passive suicidal thoughts. (AR 697). In September 2018, she was noted to have "chronic suicidality," and was found to be high risk for suicide on the Columbia Suicide Risk assessment. (AR 729, 732, 736). In March 2019, she showed anxious mood and affect, and she sometimes "forgot what she was saying mid sentence" and had rapid speech. (AR 797). Her diagnoses were listed as Bipolar Disorder, Attention-deficit/hyperactivity disorder (predominantly inattentive presentation), and social anxiety disorder. (AR 797, 800). The ALJ improperly relied on a few notes of intact judgment and insight, intact memory, and intact concentration and attention while ignoring other notes that support Pugh's statements regarding her struggles with anxiety and depression.

The ALJ also relied on a mental status exam from March 2019, where Pugh was "logical and goal oriented" and was receptive to processing her issues. (AR 23, 797). However, the ALJ once again cherry-picked one sentence from the report while ignoring the other evidence in the same report that supported Pugh's reported symptoms. While Pugh was stated to be "logical and goal oriented" and "receptive to processing issues of concern," she was also noted to show "anxious mood and affect' with rapid speech that resulted in forgetting what she was saying mid-sentence. (AR 797). The ALJ engaged in impermissible cherry-picking in relying on portions of a medical record without considering the contrary evidence in the record. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

Finally, the ALJ relied on a single page that noted Pugh had no suicidal thoughts and appeared "less blunted or anxious." (AR 23-24). While Pugh did state she had no suicidal thoughts and appeared less blunted and anxious at this particular visit, this is not indicative of her state throughout the medical record. As the Seventh Circuit has emphasized, "a person who suffers from a mental illness will have better days and worse days." *Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011). "[A]n ALJ cannot rely solely on the claimant's or doctor's hopeful remarks made during better days, but must consider whether the claimant can hold a job even on low days." *Johnson v. Astrue*, No. 11 CV 6668, 2012 WL 5989284, at *11 (N.D. Ill. Nov. 29, 2012) (citing *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). The ALJ only looked to one medical record, which described Pugh as being without suicidal thoughts or anxious affect and mood. This, however, is only one treatment note, and does not accurately describe Pugh's mental state throughout the majority of the record. Pugh frequently showed anxious mood and affect, tearfulness, thoughts of death or dying, suicidal thoughts, and was noted to have chronic suicidality. (AR 358, 411, 436, 655, 656, 658, 659, 661, 691, 693, 696, 701, 729, 732). The ALJ once again improperly cherry-picked one medical note indicating a good day without considering the many treatment notes that indicated Pugh was suffering from symptoms caused by her mental impairments.

The ALJ also failed to mention Pugh's PHQ-9[2] scores when discussing her mental impairments. In July 2018, Pugh's PHQ-9 score was 26, indicating severe depression. (AR 691). In December 2018, Pugh's PHQ-9 score had improved to 16 (indicating moderately severe depression), although it was noted that her score was 22 at her last appointment, indicating severe depression. (AR 725). In February 2019, her PHQ-9 score had worsened to 18, indicating moderately severe depression. (AR 718). Pugh's PHQ-9 scores regularly indicated either moderately severe depression or severe depression. These scores support Pugh's subjective symptoms, and the ALJ failed to discuss these scores anywhere in the decision. While this error may not be enough to remand on its own, it further shows the ALJ's choice to cherry-pick evidence that supports his decision while ignoring reports that support Pugh's statements regarding her mental health symptoms.

In sum, the ALJ erred in considering Pugh's subjective symptoms, particularly with regard to her mental impairments. The ALJ impermissibly cherry-picked evidence from a few portions of treatment notes while ignoring evidence that contradicted the ALJ's finding. The ALJ also failed to provide a thorough analysis of Pugh's subjective symptoms and how they are either supported or contradicted by the evidence in the record. As a result, a remand is warranted for reconsideration of Pugh's mental subjective symptoms and their impact on the RFC.[3] While Pugh asks that the Court reverse the Commissioner's decision and remand for an outright award of benefits (ECF 20 at 26), "[a]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Augh. 15, 2011). The

---

[2] The PHQ-9 is a questionnaire used to assist a clinician in diagnosing depression, as well as to quantify depression symptoms and monitor severity. It "objectively determines severity of initial symptoms, and also monitors symptom changes and treatment effects over time." *See* https://www.mdcalc.com/phq-9-patient-health-questionnaire-9#use-cases (last visited June 7, 2021). Scores from 10-14 indicate moderate depression, 15-19 indicate moderately severe depression, and 20-27 indicate severe depression. *See* https://www.med.umich.edu/1info/FHP/practiceguides/depress/score.pdf (last visited June 7, 2021).

[3] Because a remand is warranted for reconsideration of Pugh's subjective symptoms and mental impairments, the Court need not reach Pugh's remaining arguments. Pugh's remaining arguments regarding the RFC and reliance on state agency psychological consultants rest on a proper consideration of her mental impairments, and therefore a proper consideration of her mental impairments and subjective symptoms may impact those remaining arguments.

record here does not "yield but one supportable conclusion" in Pugh's favor. *Briscoe ex rel. Taylor*, 425 F.3d at 355. Rather, the ALJ cherry-picked medical evidence to support his conclusion and failed to properly analyze Pugh's subjective symptoms. This issue can only be resolved through further proceedings on remand. *See Bray,* 2011 WL 3608573, at *10.

## IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED, and the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

Entered this 11th day of June 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge